**MEMO ENDORSED**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _3/8/2022_

RECEIVED
MAR 08 2022
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:17-cr-00438-VEC |
| V. | : | |
| DAVID SANTIAGO | : | NOTICE OF MOTION |

---

   David Santiago will move this Court in the capacity Pro Se, before the Honorable Judge Valerie E. Caproni in the United States Court For The Southern District Of New York, hereby presents this Motion for an Order pursuant to 18 U.S.C. Sec 3582 (G)(1)(A)(i) to reduce his sentence to a time-served period of imprisonment, to be followed by a period of 5 years supervised release, with the first 12 to 18 months of supervised release to be served on home confinement. Or in the alternative, reduce but not eliminate Defendant's sentence. Defendant intends to file a reply to any opposition to this Motion.

2-21-2022
Dated

/s/ David Santiago
David Santiago
FPC Schuylkill
P.O. Box 670
Minersville, PA. 17954

Application DENIED.  For the reasons already stated in the Court's June 29, 2020 Order, Petitioner fails to demonstrate "extraordinary and compelling reasons" warranting a sentence reduction.  *See* Dt. 569 at 1-2; *see also USA v. Santiago*, No. 13-CR-811, Jan. 15, 2021 Order, Dt. 753 (denying Mr. Santiago's motion for a reduction in sentence based on the same health concerns).

The Court encourages Mr. Santiago, if he has not already done so, to get a COVID booster shot.  A full COVID vaccine, with a booster shot, is highly effective at preventing serious illness or death from COVID.

It is further ordered that the medical records Petitioner submitted to the Court will be filed under seal.

The Clerk of Court is respectfully directed to mail a copy of this Order to Petitioner at: David Santiago, No. 69461-054, FCU Schuylkill, P.O. Box 670, Minersville, PA, 17954.  The Clerk of Court is further directed to close the open motion at docket entry 675.

SO ORDERED.

3/8/2022

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:17-cr-00438-VEC |
| V. | : | |
| DAVID SANTIAGO | : | MOTION IN SUPPORT |

---

1.    I submit this Motion in Support of the Motion to reduce
Defendant's sentence pursuant to 18 U.S.C. Sec. 3582 (C)(1)(A)(i),
the compassionate release statute, which, as amended by the First
Step Act, allows the Court to reduce sentences for "extraordinary
and compelling" reasons.

2.    The rapid spread and dangers of COVID-19 are by now part of
our collective knowledge, and policy makers recognize is especia-
lly dangerous within the confines of correctional institutions,
in combination with Mr. Santiago's chronic Cellulitis/Venous
Insufficiency,  that manifest in episodes of leg swelling (red and
hot to the touch), extreme pain, tempature of over 102, along
with Obesity and Smoking Status, constitute extraordinary and
compelling circumstances that warrant reduction of his sentence.

3.    The Delta and Omicron-Variant quickly spread through the
federal prison system, (as FCI Schuylkill is experiencing) DOJ
continues to downplay the threat, and maintains it's policy of
undercounting infections and deaths. As the week of 1-17-22, the
Director of the FBOP, Michael Carvajal, unexpectantly resigned.
Right after him, the Deputy Director of the BOP, Gene Beasley,
announced his retirement.
The departures, while welcome in some senate chambers, are cause
for alarm because the BOP is now facing another crisis as it
battles the surging COVID-19 Omicron Variant. On December 10,
2021, there were 265 active COVID-19 infections among federal
prisoners across the country...now, just a month later, that
figure is at 3,761 cases and climbing. If the past is any
indication of how the BOP is reporting these numbers, it's grossly
underestimated.

4.    This policy of Deliberate Indifference has not had the desired effect, as more and more prisoner advocates and groups like the ACLU, and even some labor leaders for federal correctional officers, call an end to the policy of official "impunity" https://uclacovidbehindbars.org/delta-data-transparency. Omicron variant, has perpetuaued uncertainty. See Omicron Variant: What You Need To know, Ctrs, For disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last accessed Dec. 20, 2021). Or people who were not properly screened before being compelled to take the shot. www.verywellhealth.com.

5.    The Court should grant relief based on the severity of Mr. Santiago's medical conditions and unique outbreaks of Cellulitis, if happens simultaneously to contracting this deadly disease COVID-19, it could very well lead to an untimely death, for Mr. Santiago. This in combination with the HARSH CONDITIONS spent in quarantine and punitive punishment during lock-down/modified operations, coupled with inhumane treatment, while at Ft. Dix, and now at FCI Schuylkill, constitute extraordinary and compelling circumstances that warrant reduction of his sentence.

6.    When this Court sentenced Mr. Santiago in 2018, it could not have foreseen the spread of this deadly pandemic, which has transformed the Court's intended sentence into a potential death sentence. David Santiago, respectfully moves this Court to reduce his sentence to a time-served period of imprisonment with a period of five years supervised release (with the first 12 to 18 months of supervised release to be served on home confinement) pursuant to 18 U.S.C. Sec. 3582 (C)(1)(A)(i). Or in the alternative, reduce but not eliminate Defendant's sentence.

7.    Mr. Santiago respectfully asks this Court to consider this motion on an expidited basis, as each day in custody brings renewed risk to his life and health.

8.    On March 31, 2015, David Santiago was sentenced to 128 months' imprisonment after pleading guilty to 18 U.S.C. Sec. 2118(D) Conspiracy to burglarize pharmacies of controlled substances, and 18 U.S.C. Sec. 2118(B) Burglary of pharmacy and

......aiding and abetting the burglary of a pharmacy. Also on
December 13, 2018, David Santiago was sentenced to 60 more months
imprisonment after pleading guilty to 18 U.S.C. Sec. 1962(d)
Racketeering Conspiracy. Running consecutive to the 128 months,
aggregated sentence procedure of 188 months. (See Exhibit A.
Sentencing Monitoring Computation Data).

9.    Mr. Santiago has been in federal custody in connection with
the present offenses since October 30, 2013, which amounts to 99
months of actual incarceration. After accounting for good cond-
uct time (846GCT), he has served the equivalent of an 127-month
sentence( Not including "Earned Time Credits", for completing
EBRR/PA) and is currently projected for release on March 8, 2027,
and home detention on September 8, 2026. (See Exhibit A also).

10.    Mr. Santiago submitted a request for Compassionate Release,
to the Warden of FCI Schuylkill on January 6, 2022, and his
request was denied on January 20, 2022. (See Exhibit B). Mr.
Santiago appealed this decision on January 26, 2022, and it was
rejected on 1-28-22, so he refiled on 1-31-22, and it's pending.
(See Exhibit B Also.)

> The Court Should Reduce Mr. Santiago's Sentence Pursuant
> To The First Step Act Because Extraordinary And
> Compelling Reasons warrant reduction.

11.    The Court is aware of Mr. Santiago's Cellulitis outbreaks,
as well as his February 2018 hospitilization while in MDC Broo-
klyn. The Court is also aware, when on April 19, 2020, that his
Cellulitis inflamed making him unable to walk, and he had a
temp. of 102.7. Mr. Santiago's significant medical conditions,
including severe Cellulitis, Obesity, and Former Habitual
Marijuana/Cigarette Smoker Status, as well as Venous Insuffic-
iency. Also he has severe recurring headaches since contracting
COVID-19, and medical refuse to treat him for these headaches.
At a time when the BOP has experienced outbreaks of COVID-19.
As FCI has experienced, on top of a Nation-Wide lock-down
most threatening to those like Mr. Santiago, constitute

......"extraordinary and compelling reasons" for modification of Mr. Santiago's sentence.

12.    The government is **Directed to Concede** that extraordinary and compelling circumstances exist when a defendant has a CDC listed High-Risk medical condition, such as Obesity/History of Smoking, which Defendant has, per the DOJ's **internal memorandum** directed to U.S. Attorneys, dated May 18, 2020. defendant found the DOJ directed in United states v. Firebaugh, No.16-20342-CR-UU (S.D. Fla. June 1, 2020) where the government properly filed a supplement making the Court aware.

13.    The government will typically avoid making the Court aware of this DOJ Memorandum, assuming a defendant, usually Pro Se, will not know of it's existence. See e.g. U.S. v. Parish No.2: 07-CR-0758, U.S. Dist. LEXIS 61684(D. S.C. March 17, 2021)(upon remand to consider an internal guidance of the DOJ, "This Court was unaware of the DOJ internal guidance and therefore directed the government to provide information relating to it")("The government filed a [] response...disclosing for the first time a DOJ internal guidance...").

A.    Procedural History Within The Compassionate Release Scope

14.    On 5-28-20, Defendant David Santiago filed an "Emergency Motion For C.R.", arguing "Unprecedent Changes In Circumstance's That could Not Have Been Foreseen At the Time Of His Sentencing". Also arguing his "Cellulitis"/"Fevers" & Hospitilizations. The BOP's poor "action plan", to contain & mitigate the spread of COVID-19 within it's facilities (which is relevant now), specifically photo's & video from Ft. Dix, showing prisoner's unability to social distance & no mask wearing. Also, the Court never intending for his sentence to carry out an unreasonable threat to death.

15.    The government filed it's opposition to Defendants motion for sentence reduction per 18 U.S.C. Sec. 3582(C)(1)(A)(i) on 6-11-20. The government's main argument was the pharmacy burglaries, & failure to show "Extraordinary and Compelling" Circumstances Entitling him to release.

.....Particularly, his serious & dangerous crimes, (leader in a violent racketeering orginization/home invasion robberies).

16.   On 6-26-20, Defendant filed a brief in reply to the government's opposition, arguing the government's " Blatant distortion of the truth & layed out the foundation of the 370- man units with pipes dripping with urine, standing water with black mold throughout the unit. Also arguing his "Cellulitis", "Venous Insufficiency" & "Obesity".

17.   On 6-29-20, The Honorable Judge Valerie Caproni, denied Mr. Santiago's Motion for C.R., stating that there is no evidence that Cellulitis increased his risk of severe illness or death were he to contract COVID-19. Also stating that he does'nt currently have COVID-19 & is otherwise an healthy 36 year old. And that "His release at this point, after serving none of the sixty-month sentence imposed by this Court, would be an inadequate punishment for his crime; 3553(a) factors & long history of robberies. And that he would pose a significant danger to the community if he were released early.

18.   Mr. Santiago's Motion was stayed in the Honorable Andrew G. Carter's Court, pending the result from his C.R. request from Honorable Judge Caproni. So on 6-20-20, Defendant filed a brief in reply to the government's response in opposition to his motion for C.R. Arguments were, that the sentence imposed by Judge Caproni should have been merged into one sentence and run concurrently. Also, as to whether the government in plea negotiations acted in bad faith, when they advised Mr. Santiago that if he plead guilty to the charges in front of Judge Carter's Court, that they Would Not Seek Career Offender Status against him, while knowing that they were bringing charges against him for the issue that His Honor could consider at sentencing, but chose not to use them against Defendant.

19.   Also arguing the government's Double Dipping, as Mr. Santiago's conduct in the 2006 N.Y. Courts matter (sentenced to 5-years) and the 2013 federal matter were both related to the latter charge of the conduct that was brought to His honor's attention at his sentencing.

.....And the additional 60-months to his 128 month sentence &
the government waiting 4 years to charge him with the indictment
in front of Your Honor, despite having this knowledge when they
indicted Mr. santiago in Case # 13-cr-811(ALC).

20.    Furthermore, stating that Mr. Santiago was prejudiced by
the government's plea manipulation of him. By stating that it
would not Pursue a Career Offender Status at the time in Judge
Carter's Court case, and later using those charges to Career Him
Anyway. Motion was denied by Hon. Carter on 1-13-2021. (This
circumstance itself presents an "Extraordinary and Compelling"
reason to warrant an Modification/Reduction In Sentence, Per
Brooker, 976 F.3d 228 at 237).

B.     Mr. Santiago has exhausted the avaliable administrative
       remedies.

21.    Under the FSA, a defendant may bring a motion for compa-
ssionate release only after exhausting all administrative rights
to appeal a failure of the BOP to bring such a motion, or after
the lapse of 30 days from the filing of such a motion with the
Warden of the defendant's facility. 18 U.S.C. Sec. 3582(C)(1)(A)
(i); U.S. v. Sturgis, 2020 U.S. Dist. LEXIS 219102 at *9 (W.D.
N.Y. Nov. 23, 2020). Mr. Santiago submits with his motion for
release, a response from the Warden of FCI Schuylkill, J. Sage,
denying his motion for compassionate release. (See Exhibit B).

C.     Mr. Santiago's medical conditions, along with other
       reasons in light of the COVID-19 pandemic, are
       extraordinary and compelling reasons for reduction
       of his sentence.

22.    The First Step Act grants sentencing courts authority to
reduce an otherwise final term of imprisonment for "extraordinary
and compelling reasons" 18 U.S.C. Sce 3582(C)(1)(A)(i). The
present ongoing global pandemic is an extraordinary circumstance
beyond what most Americans have experienced in their lifetimes.

23.    The grave risk to Mr. Santiago from continual incarceration
provides a compelling reason for his immediate release to home

.....confinement, and or reduction, but not eliminating his sentence. The statutory requirement for sentence reduction are that the Court: (1) find extraordinary and compelling reasons for the reduction; (2) consider the relevant sentencing factors under 18 U.S.C. Sec. 3553(a); and (3) ensure any reduction is consistent with applicable policy statements.

24.     A Court receiving a motion brought directly by a defendant has full discretion to determine what factors constituted "extraordinary and compelling" reasons for relief under section 3582. The Second Circuit addressed that division in Brooker, ultimately concluding that a district court considering a motion for compassionate release brought by a defendant is not bound by the definition of extraordinary and compelling reasons for reduction contained in section 1B1.13, and is instead free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release". (Brooker, 976 F.3d 228 at 237). "Nothing. ...in the now out-dated version of Guideline Sec. 1B1.13, limits the district court's discretion".

1.)     Mr. Santiago's significant medical conditions, make him particularly susceptible to increased risk of serious injury or death as a result of COVID-19.

25.     As the epicenter of this ongoing global crisis, nearly 1,000,000 people in the United States have died as a result of the COVID-19 pandemic (https;//www.nytimes.com/interactive/ 2020/us/coronavirus-us-cases.html). Also the 7-day average for cases is 187,500 daily, and 2,300 for deaths. On March 13, 2020, the President of the united States declared the COVID-19 outbreak  a national emergency under the National Emergencies Act, 50 U.S.C. Sec 1601 et seq. As the Court is no doubt aware, the pandemic is still ongoing. (https://www.whitehouse.gov/presid ential-actions/proclemation-declaring-national-emergency-concer ning-novel-coronavirus-disease-covid-19-outbreak/.)

26.   The CDC advises that the coronavirus is " spread mainly
from person-to-person...[b]etween people who are in close cont-
act with one another...[t]hrough respiratory droplets produced
when an infected person coughs or sneezes. (https://www.cdc.gov/
coronavirus/2019-ncov/prepare/transmission.html). The droplets
can land in the mouths or noses, or can be inhaled into the
lungs, of people who are within 6 feet of the infected person.
The coronavirus is highly contagious and those who are infected
can spread the virus even if they are asymptomatic. Additionally,
studies have shown that the coronavirus can survive from three
hours to three days on various surfaces. )https://www.nih.gov/
news-events/news-releases/new-coronavirus/stable-hours-surfaces).

27.   As of April 21, 2021, BOP reported 46, 483 inmates and
6,250 staff have recovered from the virus, and 233 inmates and 4
staff have died from the virus. Moreover, the BOP has completed
110,239 COVID-19 tests.(https://www.bop.gov/coronavirus/).
These numbers have increased since, Also as of January 21, 2022,
there were 87 active COVID-19 cases at FCI Schuylkill out of a
total population of 1,083. COVID-19 Cases, BOP.

28.   The BOP has acknowledged that these reported numbers are
low and that the actual numbers of cases is likely higher.
Asked whether the BOP's figures could be relied upon as an acurate
reflection of the number of inmates and staff that are infected,
BOP public information Supervisor Sue Allison acknowledged that
"reporting cases while tied to positive cases does not necessar-
ily account for unconfirmed non-tested cases". (https://www.
forbes.com/sites/walterpavlo/2020/04/01.bureau-of-prisons-
underreporting-outbreaks-in-prison/#268a97f7ba32).

29.   It's clear that DOJ is persisting with it's policy of non-
testing, or testing without placing the test swab far enough up
the nasal passages to be effective, to reduce it's positives,
and continues to undercount new cases on it's website. (FCI
Schuylkill did this on 9-1-21, and again on 9-16-21).

30.   Some people who are fully vaccinated will get COVID-19.
The Delta variant is more contagious than previous variants of

.....the virus that causes COVID-19. Overall, if there are more
infections with SARS-COV-2( the virus that causes COVID-19)
there will be more vaccine breakthrough infections. (www.cdc.
com. 11-1-21). OMICRON, DELTA, and all other forms of COVID
continue to make themselves at home in federal prison, and DOJ
appears powerless to stop it.

31.    Your Honor knows that the "Wildly Contagious OMICRON"
variant, constitutes an Extraordinary and Compelling reason to
grant relief. See United states v. Rose, 2022 U.S. Dist. LEXIS
706 (S.D.N.Y. Jan. 3, 2022). Where Your honor granted Mr. Rose's
Compassionate Release Motion explaining at *2-3 " The Court finds
that the COVID-19 pandemic, including the wildly contagious
Omicron variant, constitutes an extraordinary and compelling
reason to grant the requested relief. See Brooker, 976 F.3d at
236 (noting 'district courts' discretion to consider whether any
reasons are extraordinary and compelling"); United States v.
Maya Arango, No. 15-CR-104, 2020 WL 3488909, at *2 (S.D.N.Y.
June 26, 2020)(holding that the threat of COVID-19 may constitute
an extraordinary and compelling reason supporting compassionate
release); See also Compassionate Release Mot. DKT. 458 at 4-6
(collecting cases where courts found the COVID-19 pandemic
constituted an extraordinary and compelling reason)."

    Further stating: " When the Court sentenced Mr. Rose in
September 2019, it did not anticipate the pandemic and the
effects of the pandemic on incarcerated inmates, including Mr.
Rose". As Mr. Santiago is in a lock-down now, no TV's, commiss-
ary, rec, and very limited movement. And locked in from 4:30
P.M. until 6:30 A.M. daily.

32.    MMWR Morb Mortal Wkly Rep. 2021; 70: 1349 1354.DOI:https:
//dx.doi.org/10.15585/mmwr.mm7038e3externalicon. This study notes
that the five top risk factors for possible death are "History
Of Smoking", Hypertension, "Obesity", being overweight, and
diabetes. According to the Wall Street Journal, "there have been
more than 1.89 million cases and at least 72,000 hospitilizati-
ons and 20,000 deaths Among Fully Vaccinated People in the U.S.
this year..." www.wsj.com, 11-22-21.

33.   Dr. Jeffrey Shaman, an infectious disease expert at Colum-
bia University explains: "The bottom line is that there are peo-
ple out there shedding the virus who don't know that they're
infected". To this day, inmates must share communal living spaces:
cells, recreation rooms, dining halls, libraries, and exercise
yards. To make matters worse, hand sanitizer, an effective dis-
infectant recommended by the CDC to reduce transmission is
forbidden, "contraband" in BOP facilities because of it's alc-
ohol content. (https://www.abajournal.com/news/article/when-purell-
is-contraband-how-can-prisons-contain-coronavirus).

34.   Attorney General Barr urged the Director of the BOP to
prioritize home confinement for vulnerable individuals.(https://
www.justice.gov/file/1262731/download). On April 3, 2020, Attorney
General Barr issued a memorandum directing the BOP to move pris-
oners into home confinement with due "dispatch".

35.   On April 10, 2020, members of Congress wrote again to A.G.
Barr, noting that "since the last time we wrote you, there have
been at least eight deaths in BOP custody", all of which involved
prisoners with "long-term, pre-existing medical conditions", and
asked why BOP "did not see fit to take action concerning these
individuals before it was too late". (https://www.justice.gov/
file/1262731/download).

36.   Correctional institutions are among the most dangerous
places to be during an epidemic because they create the ideal
environment for transmission of contagious disease. Unfortunat-
ely, there is currently no cure for the virus, although medical
treatments have improved. To stem the spread of the virus, people
have been urged to practice "Social Distancing", and to wear
masks.

37.   Social distancing is particularly difficult in the penal
setting, however. Especially now, at Camp Schuylkill as on 11-1-
2021, Camp Administrator Ryan Miller took all of Camp 2 prisoners
and moved them into Camp 1, and double bunked them, as there are
over 100 prisoners in Camp 1 now, while Camp 2 sits empty. This
was done as a form of punishment for them finding contraband on
Camp grounds. So instead of taking Tv's, Rec. or commissary,

.....Administrator Ryan Miller decides that contraband is worth
risking/taking our lives, this amounts to "Cruel and Unusual
Punishment" And "Deliberate Indifference"(See Prisoner Ruben
Holton's message dated 12-14021, regarding this issue & the
conditions we go through. (Mr. Holton is the Prisoner Liason
for us here at the Camp)). See Exhibit C.

2.)    The Conditions at FCI Schuylkill during the COVID-19
       pandemic present an extraordinary and compelling reason
       to reduce Mr. Santiago's current sentence.

38.   The conditions at FCI Schuylkill prevent Mr. Santiago from
taking adequate precautions to prevent contracting COVID-19, as
several prisoner's are experiencing their second & even third
COVID-19 infection. Mr. Santiago cannot adequately socially
distance from his roomate, BOP is not testing inmates or staff
regulerly. Mr. Santiago has not been given sanitation equipment
including hand sanitizer, and staff members routinely enter the
facility without masks. Inmates in Mr. Santiago's building share
1 water fountain, two phones, 1 ice machine, and five computer
terminals.

39.   March of 2021, FCI Schuylkill had the highest number of
COVID-positive inmates of any federal correctional facility.
(https://www.bop.gov/coronavirus(accessed on 3-12-21)). At this
date, 3-12-21 data showed that up to as many as 609 inmates
have been infected with COVID-19 at one time or another. The
number of staff and inmates infected with COVID-19 at Schuylkill
at one time or another, clearly shows that Mr. Santiago cannot
rely on FCI Schuylkill to protect him from COVID-19, nor
prevent the spread of COVID-19 among inmates and staff at the
facility, as evidenced below also.

40.   FCI Schuylkill is still operating at a "COVID-19 Operati-
onal Level Three", FCI Schuylkill, BOP, https://www.bop.gov/
locations/institutions/sch/(last visited Dec. 3, 2021), which is
the most severe operational level and indicates that the medical
isolation rate is at more than 7%, the facility vaccination rate
is less than 50%, or the community transmission rate is at or

.....greater than 100 per 100,000 over the last seven days. As
of December 3, 2021, visiting at FCI Schuylkill has been susp-
ended.

41.   "An unconfirmed report from FCI Medium Facility Schuylkill,
447 infected inmates, with 1100 completed tests"(Derek Gilna
12-13-21 Newsletter (dgilna1948@yahoo.com))...."Schuylkill FCI,...
...are inundated with OMICRON, with cases sometimes in the hundr-
eds, either diagnosed or undiagnosed"(1-10-22 Derek Gilna News-
letter)."...FCI Schuylkill..., with all these institutionsin Code
Red, with full, or almost full lockdowns, and high levels of infe-
ction". (1-31-22- Derek Gilna Newsletter).

42.   Since the beginning of the pandemic, a number of district
courts have granted C.R. sentence reductions for inmates at FCI
Schuylkill, finding that the conditions at the facility contri-
buted to the extraordinary and compelling reasons that warrant
sentence reductions. As other courts have found, including this
Honorable Court that the conditions at FCI Schuylkill are
incredibly dangerous to an inmate in Mr. Santiago's position, in
light of the COVID-19 pandemic and present an extraordinary and
compelling reason for a reduction in Mr. Santiago's current
sentence.

43.   U.S. v. Gileno, 2020 U.S. Dist LEXIS 47590(D. Conn. Mar. 19,
2020); U.S. v. Rountree, 2020 Dist. LEXIS 91064(N.D.N.Y. May 18,
2020); U.S. v. Galloway, 2020 Dist LEXIS 89689 (May 21, 2020
Dist. MD.); U.S. v. Sheafer, U.S. Dist LEXIS 114528(M.D.Pa.
June 29 2020); U.S. v. Hardy, 2020 Dist. LEXIS 137564(Aug. 3,
2020 Dist MD.); U.S. v. Ramos, 2020 U.S. Dist. LEXIS 206344
(S.D.N.Y. Nov. 4, 2020); U.S. v. Way, 2020 U.S. Dist. LEXIS
237200 (E.D.Pa. Dec. 17, 2020); U.S. v. Lewis, 2021 U.S. Dist.
LEXIS1662(S.D.N.Y. Jan. 5, 2021); U.S. v. Clark, 2021 U.S. Dist.
LEXIS 9975 (Dist. Conn. Jan. 20, 2021); U.S. v. Santana, 2021
U.S. Dist. LEXIS 86975 (S.D.N.Y. May 6, 2021); U.S. v. Diaz,
2021 U.S. Dist. LEXIS 55411 (E.D.N.Y. Mar. 23, 2021); U.S. v.
Romero, 2021 U.S. Dist. LEXIS 73877 (S.D.N.Y. Apr. 16, 2021);
U.S. v. Osorio-Perez, 2021 U.S. Dist. LEXIS 148006 (S.D.N.Y.
Aug. 6, 2021); U.S. v. Johnson, 2021 U.S. Dist. LEXIS 231925
(E.D.N.Y. Dec. 3, 2021).

44.   Showing the Court of several prisoners, where various
Courts have granted compassionate release motions, due to the
conditions at Schuylkill prison is an extraordinary and compell-
ing reason warranting a reduction in sentence. Mr. Santiago
has been through "serious" COVID-19 outbreaks at FCI Ft. Dix,
where he contracted COVID-19 in December of 2020. Then transfer
to FCI Schuylkill in November of 2021, just to go through ano-
ther "serious" COVID-19 outbreak & lock-down, with no visits.
On top of that, go through a "ational Lockdown" early this
month, and now has no commissary, TV's, rec or outside activi-
ties & locked in all day until further notice, due to certain
prisoners conduct. This is exacting a very harsh punishment of
unbelievable proportions, for Mr. Santiago.

3.)   Courts have found extraordinary and compelling reasons
      warranting relief in cases similar to Mr. Santiago's
      sufficient to reduce his current sentence.

45.   Since the COVID-19 pandemic, numerous courts in this dis-
trict and others have found extraordinary and compelling reas-
ons warranting relief where a defendant presents evidence of a
pre-existing condition that makes him more vulnerable to COVID-
19, which is furhter exasperated by the increased risk of
COVID-19 in prisons.

46.   Accordingly, this Court has authority to consider whether
the worsening global pandemic (Delta-Omicron-Variant/Breakthrough
cases), combined with Other Relevant Circumstances in this
case, including Mr. Santiago's obesity, cellulitis, and heavy
former smoking status (Harsh conditions), present an extra-
ordinary and compelling basis for a sentence reduction, regard-
less of whether BOP moves for compassionate release or whether
the request falls within on of the existing categories to U.
S.S.G. Sec. 1B1.13.

47.   The Second Circuit has clarified that Sec. 1B1.13 "is not
'applicable' to compassionate release motions brought by defen-
dants", rather than by the BOP, and "cannot constrain district
courts discretion to consider whether any reasons are

.....extraordinary and compelling" in such cases. United States
v. Brooker, 976 F.3d 228, 236(2d Cir. 2020).

48.   Mr. Santiago suffers from Cellulitis/Venous Insufficiency,
that if he has an episode of Cellulitis, coupled with contrac-
ting COVID-19 at the same time, (which is highly likely as
witnessed of FCI Schuylkill's excessive outbreaks & Mr. Santia-
go's recurring episodes of Cellulitis) could very well end with
an untimely death.

49.   Mr. Santiago has had a long and difficult history with
Cellulitis. In the fall of 2017, he suffered a severe episode,
whereas he had a temp. of 102.8 and heart rate of 118.

50.   As a result of that episode, he was hospitalized at Kings-
brook Jewish Medical Center and received treatment for his right
side Cellulitis. See Exhibit D, (9-26-17 clinical encounter,
9-26-17 discharge papers & 9-29-17 medical "return trip").

51.   Mr. Santiago has had these episodes several times & has
been in and out of sick-call & hospitals, where his most recent
occurrence was 6-1-2020, with a temp. of 102.8, heart rate of
126, & Blood Pressure of 96/61. See exhibit E (6-1-20 clinical
encounter). Also see other medical records in Exhibit F.

52.   In addition to Cellulitis & venous Insufficiency, Mr.
Santiago's Obesity, Former Smoker Status, Opioid Use Disorder &
other health problems places him at increased risk for compli-
cations related to COVID-19. The CDC has classified adults
with a Body Mass Index ("BMI") of over 30.0 as Obese (https://
www.cdc.gov/obesity/data/obesity-and-covid-19.html).

53.   The CDC has explained that people of any age who have
serious underlying conditions, including former smoking status
and obesity, are at higher risk for severe illness from COVID-19.
People with Certain Medical Conditions, Center for Disease
Control and Prevention, supra. See U.S. v. Ramos at 2020 U.S.
Dist. LEXIS6 "Ramos' obesity, combined with his sinus brady-
cardia and human immunodeficiency virus, satisfy that require-
ment".

54.    U.S. v. Lewis at 2021 U.S. Dist. LEXIS 3 " The Center
For Disease Control ("CDC") has identified Obesity as a condi-
tion causing increased risk for severe disease if one contracts
COVID-19". U.S. v. Arias-Baez, 2021 U.S. Dist. LEXIS 45123(S.D.
N.Y. Mar. 10, 2021) at *5 "Arias is a 32 year old **Former Smoker**
who is medically Overweight and appears to suffer from untreated
hypertension...the simultaneous presence of two underlying cond-
itiomns, is at a significantly greater risk for hospitilization
from COVID-19 than someone with only one such condition".

55.    U.S. v. Cekaj, 2021 U.S. Dist. LEXIS 70390 (S.D.N.Y. Apr.
2021) At *3-4 "The CDC has identified obesity, diabetes and
smoking as increased rosk factors for severe illness from
COVID-19...The Government <u>concedes</u> that the Defendant's status
as a former smoker renders Defendant at increased risk from
COVID-19".

56.    Mr. Santiago has been vaccinated, and the Government may
contend that he has provided effective 'self-care' against the
virus because he has received the COVID-19 vaccine, and he does
not present any extraordinary and compelling reasons allowing
compassionate release. (as  was the case in U.S. v. Mansourov,
2021 U.S. Dist. LEXIS 243906 (D. Conn. Dec. 22, 2021)). The
Court agreed that "an incarcerated person's vaccination status
does not serve as a total bar to the relief Dr. Mansourov seeks.

57.    See U.S. v. Flores, 97 Cr. 817 (DC),2021 U.S. Dist. LEXIS
WL 3682054, at *2 (S.D.N.Y. Aug. 19, 2021)(granting compassion-
ate release motion and noting that "COVID-19 still presents a
substantial risk, particularly in light of the uncertainties
presented by the Delta Variant and breakthrough infections");
U.S. v. Reyes, No. 3:11cr1(JBA), 2021 U.S. Dist. LEXIS 99864,
2021 WL 2154714, *3 (D. Conn. May 26, 2012)("Although Mr. Reyes
has received both doses of the vaccine that provides very sub-
stantial protection against COVID-19, newly avaliable data
describe "breakthrough infections" caused by COVID variants in
vaccinated populations").(https://www.cdc.gov/coronavirus/2019-
ncov/variants.omicron-variant.html.).

58.    See U.S.,v. Johnson, 2021 U.S. Dist. LEXIS 231925 (E.D.
N.Y. Dec. 3, 2021) an FCI Schuylkill prisoner, at 2021 U.S.
Dist. LEXIS 13-14, explaining: Some courts have continued to
find the risk of COVID-19 germane to their analysis of extra-
ordinary and compelling circumstances, even where, as here, the
defendant is vaccinated. See U.S. v. Salemo, No. 11-cr-65(JSR),
2021 U.S. Dist. LEXIS 169162, 2021 WL 4060354, at *6 (S.D.N.Y.
Sept. 7, 2021)(agreeing that the Defendant's age and medical
condition put him at risk for "a severe case of COVID-19" even
though he was vaccinated and had already recovered from COVID-19);

59.    ...U.S. v. Sherrod, No. 19-CR-20139(AJT), 2021 U.S. Dist.
LEXIS 147643, 2021 WL 3473236, at *5 (E.D. Mich. Aug. 6, 2021)(
finding the risk of COVID-19 relevant to the court's "extraor-
dinary and compelling" determination because "recent research
reflects that 1) breakthrough infections are becomming more and
more frequent, 2) a significant number of breakthrough infecti-
ons may lead to so-called 'long COVID' and 3) people[] who have
underlying conditions and reside in congregate settings are at
highest risk for severe illness, despite vaccination").

60.    See also U.S. v. Osorio Perez, 2021 U.S. Dist. LEXIS 148
006 (S.D.N.Y. Aug. 6, 2021). Explaining that his experience of
contracting COVID-19 at FCI Schuylkill and suffering severe
and lingering consequences from COVID-19 in December 2020 & his
fear of reinfection. U.S. V. Secchiaroli, 2021 U.S. dist. LEXIS
29212 (W.D.N.Y. Feb. 17, 2021) 35 year old Defendant alleging
that his infection has caused "irrepairable harm" and that the
BOP & FCI Fort Dix were negligent & deliberately indifferent...
it is conceivable that he could be re-infected and experience a
severe case of COVID-19...Defendant's offense conduct was
atrocious (sex offender), the Court found that his recidivism is
unlikely because his health conditions and risk of infection
during the pandemic will limit his mobility to interact with
others.

4.)    Harsh Conditions during the COVID-19 Pandemic behind
       bars; Reducing but Not Eliminating/Immediate Releasing
       Prisoner; And Other reasons can be considered when grant-
       ing a Defendant C.R.

61.   Mr. Santiago has been under "Harsh Conditions" at FCI
Schuylkill, and FCI Fort Dix. As of right now there is no visi-
ting, rec., tv's, programming, commissary, as well as less food
being served at Schuylkill. The milk is constantly spoiled, due
to the coolers in the facility not working. Additionally, the
Camp is crowded, specifically due to all prisoners living in
Camp #1, double bunked, as Camp #2 sits empty.

62.   Several Courts have recognized "harsh conditions" in
reviewing motions for compassionate release. See U.S. v. Cruz,
2021 U.S. Dist. LEXIS 66485 (D. Conn. Apr. 6, 2021) at *7
"Courts reviewing motions for sentence modifications have add-
itionally considered the extent to which onerous lock-downs and
restrictions imposed by correctional facilities attempting to
control the spread of the virus have made sentences "harsher"
and more "punitive" than would otherwise have been the case".

63.   See, e.g. U.S. v. Rodriguez, 2020 U.S. Dist. LEXIS 181004,
at *7 (S.D.N.Y. Sept. 30, 2020); U.S. v. Robles, 2021 U.S.
Dist. LEXIS 150046 (S.D.N.Y.Aug. 10, 2021) at *25 "Robles simi-
larly qualifies for some reduction of sentence on this analysis.
To date, he has spent more than 16 months in custody during
COVID-19, at FCI Fort Dix.(As so to with Mr. Santiago) The
conditions at that facility, as elsewhere, have been restrict-
ive in light of the pandemic. (acknowledging that more than 50%
of FCI Fort Dix's inmates, including Robles, contracted the
virus and that the prison has implemented "strict" protocols
to curb the spread of the virus and reduce contagion rates).

64.   U.S. v. Osorio-Perez at *5; (A Schuylkill prisoner)
"Moreover, Mr. Osorio-Perez last seventeen months in custody
have occurred during the lockdowns and related restrictions
imposed by the BOP as a result of the COVID-19 pandemic resul-
ting in a more severe term of imprisonment than the Court
contemplated at the time of Mr. Osorio-Perez's sentencing hear-
ing.

65.   There were also three defendants incarcerated at Fort Dix,
like Mr. Santiago, who received "Sentence Reductions", however

.....not eliminating their sentences, due to their experience
in FCI Fort Dix. See U.S. v. Newell, Burr Jr. & Lyons Jr., 2021
U.S. Dist. LEXIS 143059 (M.D.N.C. July 30, 2021). That the
conditions of confinement at Fort Dix have been extremely diffi-
cult. The prison did a poor job responding to the difficulties
posed by this contagious and potentially deadly virus in a
congregate living situation. Despite having months of experi-
ence with the virus, prison officials made decisions in the fall
of 2020 that allowed the virus to spread throughout the prison,
and the number of cases at the prison skyrocketed over the wint-
er-all while the number of cases at many other BOP facilities
declined.

66.   Further explaining, "the three defendants contend that the
dire conditions they experienced at Fort Dix during the pandemic
constitute an extraordinary and compelling reason to warrant
a reduction in sentence. The Court agrees." Reducing Mr. Newe-
ll's sentence from 181 months to 172 months; reducing Mr. burr's
sentence from 240 months to 231 months; and reduced Mr. Lyons
sentence from 210 months to 204 months.

67.   Mr. Santiago would be grateful, with any amount of reduc-
tion of his sentence, rather it be 6 months, a year, or less.
Also, Defendant Santiago expects the government to argue that,
even if the Court finds extraordinary and compelling circumst-
ances in this motion for C.R. that the 3553(a) factors would
weigh against him, focusing mainly on the perceived danger he
presented at the time of his arrest, rather than how he's
presented today, after serving 99 months of actual incarcer-
ation.(See U.S. v. Weissinger, 2021 U.S. Dist. LEXIS 106818
(8th Cir. Mo., June 2, 2021) at 2021 U.S. Dist. LEXIS 11&12)
"18 U.S.C. Sec. 3553(a)(2)(D). This post-sentencing conduct and
positive prison record "provides the most up-to-date picture of
[his] history and characteristics."" Pepper v. United States
562 U.S. 476, 492, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011)
(citing 18 U.S.C. Sec. 3553(a)(1)).

      Mr. Santiago knows he has an serious/extensive criminal
history, that does'nt mean that he should'nt, or don't deserve

.....a reduction in sentence. His record and past conduct is just that, plain and simple "HIS PAST", he is strongly focused on his present conduct & character, as well as his positive goals of his future.

There are also cases of Judges granting Compassionate Release Motions, with prisoners with records similar & worse than Mr. Santiago's, as well as conduct.

69.     3553(a)(6): The need to avoid Unwarranted sentence Disparities among defendant's with similar records who have been found guilty of Similar Conduct. As Mr. Joel Prado, who was a member of the pharmacy burglary crew, had 9 convictions & was granted compassionate release & released from FCI Schuylkill. Also see U.S. v. Black, 2020 U.S. Dist. LEXIS 142523 (S.D. Ind. Aug. 10, 2021).

70.     See U.S. v. Romero, he was found guilty by a jury of 18 U.S.C. Sec. 1962(d) (racketeering conspiracy), as well as other charges. He was also engaged in violence as a Member of 18 Park; See U.S. v. Jones, 2020 U.S. Dist. LEXIS 91444(S.D.N.Y. May 26, 2020). He was charged also with conspiracy to commit racketeering as part of the "Big Money Bosses" street gang, in violation of 18 U.S.C. Sec. 1962(d). With the Court stating "... the underlying conduct here was very serious. Mr. Jones was an Active Member of the Big Money bosses, a violent street gang that operated in the Bronx. He stored guns for the gang, sold marijuana in furtherance of the gang, and, most significantly, participated in an attempted murder on behalf of the gang.

71.     In U.S. v. Lopez, 2021 U.S. Dist. LEXIS 36681 (S.D.N.Y. Feb. 26, 2021) he was designated as Career Offender & sentenced to 180 months, 82 months below the bottom of the advisory guidelines range (262-327). Without the career offender, his guideline range would've been 121-151 offense level 29, criminal history category IV. The Court modified his sentence to 121 months, even though he had an significant criminal history that escalated as he grew older. (as the government has pointed out in Mr. santiago's previous motion). Mr. Lopez's criminal history with escalating criminal conduct, is pointed out at

.....2021 U.S. Dist. LEXIS 19 from before 19 years of age to 29 years of age. See also U.S. v. Ford, 2021 U.S. Dist. LEXIS 124-585 (W.D. Lou. July 2, 2021).

> A Sentence of Time Served with an Extended Period of Supervised Release is Sufficient To accomplish the Goals of Sentencing. Or in the Alternative, Reduce but not Eliminate Defendant's Sentence.

72.  Defendant Santiago would also like to ask this Honorable Court, to also consider the way the government treated him in his plea negotiations & waiting nearly 4 years to charge him with the indictment, where he was sentenced to 60 months in Your Honor's Court, as an extraordinary and compelling reason/ circumstance to warrant an modification in sentence.

73.  This was explained, early-on in this motion at #'s 18-20, as in U.S. v. Brooker, the Court can consider the "full-slate" of reasons, brought before the Court to consider by the Defendant.

74.  Under all of the circumstances in this case, including Mr. Santiago's significant health conditions and his exemplary conduct in prison (2 minor incident reports over 54 months ago). This Court should conclude that the period of imprisonment that Mr. Santiago has served, along with a period of 5 years supervised release (with the first 12 to 18 months of supervised release to be served on home confinement), is suficient to satisfy the purpose of sentencing. Or in the alternative, Reduce but not Eliminate his Sentence.

75.  Additionally, Mr. Santiago's exemplary conduct while in prison likewise supports the requested sentence reduction. Since his imprisonment almost 9 years ago, Mr. Santiago has served as a model prisoner. He has taken a number of continuing classes/courses to better himself and to prepare him for his eventual release from prison, and he has worked a number of jobs while in prison, despite his severe Cellulitis and other health conditions. (See Exhibit G). Specifically, he has completed 126 courses & counting, even earning his G.E.D. while in BOP Custody

.....a great achievment that he is proud of, showing not only his seriousness about thinking of his productive future, but also his maturity, as he's applying the skills that he has developed, while being incarcerated. He is also currently enrolled in Housekeeping Vocational.

76.   Furthermore, Mr. Santiago has a release plan to ensure his safe transition back into the community. Mr. Santiago's family are deeply concerned about his vulnerability to COVID-19 while in prison as a result of his Cellulitis outbreaks & temps. over 100-plus. He will live with his Wife, Katherine Guzman at 25 Fairmont Ave. Apt. C8 in Hackensack, N.J. 07601, away from former people, places, and things, where Mr. santiago can safely quarantine fro 14 days once he is released.

77.   He will seek a Medical Center/Hospital upon release and obtain services from a Doctor that can become his personal Doctor to treat and care for him. As his wife is looking for him a Doctor currently.

78.   Additionally, there are several job offers avaliable to him upon release, J&H Auto Body Shop LLC. 11-15 Bloomfield Ave. Patterson, N.J. 07503 Telephone # (973) 944-2003/(201) 790-6252, Email: JandHAutobody23@gmail.com. Also Route 80 Auto Specialist Inc. (Mechanic Body Shop), 870 Market St., Patterson, N.J. 07513. Boss: Aury Taveras, Phone (973) 527-5622. His second job will be with his Wife's business "Endless Glintz & Accessories, helping with packaging, marketing, invetory & stock.

79.   Mr. Santiago has shown by his conduct while imprisoned that he is a different person/ changed man than when he was sentenced roughly nine years ago. Granting compassionate release would not endanger the community.

80.   Certainly, an initial period of 12 to 18 months' home confinement (with permission to work) as part of a period of 5 years supervised release, will allow for sufficient monitoring and supervision to ensure his compliance with the Court's conditions and to ensure the safety of the community.

81.   A thorough consideration of the 3553(a) factors in this
case-including Mr. Santiago's significant health concerns in
light of the COVID-19 pandemic, other reasons, stated within and
his model conduct during his time in prison support Mr. Santi-
ago's request for modification of his sentence. Specifically,
a sentence of time-served period of imprisonment followed by a
term of 5 years supervised release, with the first 12 to 18
months of supervised release to be served on home confinement will
be sufficient, but not greater than necessary, to accomplish
the purposes of sentencing. Or in the alternative, reduce but
not eliminate his sentence.


                        Respectfully Submitted,



_____          __/s/_____
      Dated                   David Santiago
                              FPC Schuylkill
                              P.O. Box 670
                              Minersville, PA. 17954

```
SCHDV  540*23 *            SENTENCE MONITORING        *    01-19-2022
PAGE 001        *           COMPUTATION DATA          *    12:08:50
                            AS OF 01-19-2022
```

REGNO..: 69461-054 NAME: SANTIAGO, DAVID


```
FBI NO..........: 617530DC4          DATE OF BIRTH: 07-27-1983  AGE:  38
ARS1............: SCH/A-DES
UNIT............: CAMP               QUARTERS.....: E02-001L
DETAINERS.......: NO                 NOTIFICATIONS: NO
```

FSA ELIGIBILITY STATUS IS: INELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 09-08-2026

THE INMATE IS PROJECTED FOR RELEASE: 03-08-2027 VIA GCT REL


```
---------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------
COURT OF JURISDICTION..........: NEW YORK, SOUTHERN DISTRICT
DOCKET NUMBER..................: 13CR811-11
JUDGE..........................: CARTER
DATE SENTENCED/PROBATION IMPOSED: 03-31-2015
DATE COMMITTED.................: 05-14-2015
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO


                 FELONY ASSESS  MISDMNR ASSESS   FINES        COSTS
NON-COMMITTED.: $200.00        $00.00          $00.00       $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

---------------------CURRENT OBLIGATION NO: 010 ----------------------
OFFENSE CODE....:  052      18:2118 BURGLRY INVOLV SUBST
OFF/CHG: 18:2118(D) CONSPIRACY TO BURGLARIZE PHARMACIES OF CONTROLLED
         SUBSTANCES-CT1, 18:2118(B) AND 2 BURGLARY OF PHARMACY AND
         AIDING AND ABETTING THE BURGLARY OF A PHARMACH

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  128 MONTHS
 TERM OF SUPERVISION............:    3 YEARS
 DATE OF OFFENSE................: 10-30-2013
```


```
G0002       MORE PAGES TO FOLLOW . . .
```

Exhibit A ①

```
  SCHDV  540*23 *            SENTENCE MONITORING        *  · 01-19-2022
PAGE 002        *            COMPUTATION DATA           *    12:08:50
                             AS OF 01-19-2022
```

REGNO..: 69461-054 NAME: SANTIAGO, DAVID


---------------------CURRENT JUDGMENT/WARRANT NO: 020 -----------------------

```
COURT OF JURISDICTION...........: NEW YORK, SOUTHERN DISTRICT
DOCKET NUMBER...................: 17-CR-00438-VEC-4
JUDGE...........................: CAPRONI
DATE SENTENCED/PROBATION IMPOSED: 12-13-2018
DATE COMMITTED..................: 01-22-2019
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                    FELONY ASSESS  MISDMNR ASSESS  FINES         COSTS
NON-COMMITTED.:  $100.00        $00.00        $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00
```

---------------------CURRENT OBLIGATION NO: 010 ---------------------------
```
OFFENSE CODE....:  545    18:1962 RACKETEER (RICO)
OFF/CHG: 18:1962-7480.F RACKETEERING CONSPIRACY

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   60 MONTHS
  TERM OF SUPERVISION............:    3 YEARS
  DATE OF OFFENSE................: 12-31-2017

  REMARKS.......: C/S TO SENTENCE IMPOSED IN DKT# 1:13-CR-00811-ALC-11
```

-------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 09-24-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 06-05-2019 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 020 010




G0002      MORE PAGES TO FOLLOW . . .



Exhibit A

```
SCHDV  540*23 *              SENTENCE MONITORING              *     01-19-2022
PAGE 003 OF 003 *             COMPUTATION DATA                *     12:08:50
                               AS OF 01-19-2022
```

REGNO..: 69461-054 NAME: SANTIAGO, DAVID


```
DATE COMPUTATION BEGAN..........: 03-31-2015
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:  188 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   15 YEARS      8 MONTHS
AGGREGATED TERM OF SUPERVISION..:    3 YEARS
EARLIEST DATE OF OFFENSE........: 10-30-2013
```

```
JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     10-30-2013     03-30-2015
```

```
TOTAL PRIOR CREDIT TIME.........: 517
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 846
TOTAL GCT EARNED................: 432
STATUTORY RELEASE DATE PROJECTED: 03-08-2027
ELDERLY OFFENDER TWO THIRDS DATE: 04-11-2024
EXPIRATION FULL TERM DATE.......: 07-01-2029
TIME SERVED.....................:    8 YEARS      2 MONTHS     21 DAYS
PERCENTAGE OF FULL TERM SERVED..: 52.4
PERCENT OF STATUTORY TERM SERVED: 61.5
```

```
PROJECTED SATISFACTION DATE.....: 03-08-2027
PROJECTED SATISFACTION METHOD...: GCT REL
```

```
REMARKS.......: 5-6-15 COMP ENTERED. KPH/D. 6-3-19: SJI UPDT C/S SENTENCE
                IMPOSED D/SYT.  09-24-20 RPC'D DUE TO FSA VERIFICATION D/LLF
```

```
S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

exhibit A ④

SANTIAGO, David
Reg. No. 69461-054
Camp 1
Page 1 of 2

### Inmate Request to Staff Response

This is in response to your Request to Staff received on
January 6, 2022, in which you request for Compassionate
Release/Reduction in Sentence (RIS). You will also be considered under
the Coronavirus Aid, Relief, and Economic Security (CARES) Act in
accordance with Attorney General William Barr's Memorandum, dated
March 26, 2020, and the First Step Act.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a
sentencing court, on motion of the Director of the BOP, to reduce a
term of imprisonment for extraordinary or compelling reasons. BOP
Program Statement No. 5050.50, Compassionate Release/Reduction in
Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and
4205(g), provides guidance on the types of circumstances that present
extraordinary or compelling reasons, such as the inmate's terminal
medical condition; debilitated medical condition; status as a "new
law" elderly inmate, an elderly inmate with medical conditions, or an
"other elderly inmate"; the death or incapacitation of the family
member caregiver of the inmate's child; or the incapacitation of the
inmate's spouse or registered partner. Your request has been evaluated
consistent with this general guidance and you did not provide any
extraordinary or compelling reasons to evaluate.

The Bureau of Prisons is stringently following the guidelines set
forth by the Centers for Disease Control (CDC) during the COVID-19
pandemic. Per the CDC, the best way to prevent the spread of
infection and decrease the risk of becoming sick is by washing your
hands often with soap and water for at least 20 seconds, practicing
social distancing, and wearing a face covering. Soap has been, and
continues to be available to inmates to use as often as needed. Face
coverings also remain mandatory for inmates while outside of their
cell, and the masks provided to the inmate population can also be
washed with soap and water. Additionally, the institution has been on
modified operations since the onset of the pandemic to limit inmate
movement and facilitate social distancing.

Currently, section 12003(b)(2) of the Coronavirus Aid, Relief, and
Economic Security Act ("CARES ACT") grants discretion to the BOP to
place inmates on home confinement for a longer term under
18 U.S.C. 3624(c)(2). The BOP's discretion is guided by criteria
listed in memorandum from the Attorney General regarding Home
Confinement dated March 26, 2020. After a review of your case, we
have determined you are not suitable for priority placement on Home
Confinement. Specifically, your medium risk recidivism score and past
conviction for a crime of violence, makes you ineligible for CARES Act
placement.


Exhibit B ④

**SANTIAGO, David**
**Reg. No. 69461-054**
**Camp 1**
**Page 2 of 2**

Accordingly, after careful consideration, your request for
Compassionate Release/Reduction in Sentence and Home Confinement under
the CARES ACT, is denied.

If you are not satisfied with this response to your request, you may
commence an appeal of this decision via the administrative remedy
process by submitting your concerns on the appropriate form (BP-9)
within 20 days of the receipt of this response.

_____                    1·20·22
J. Sage, Warden                            Date


Exhibit B ⑤

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Santiago, David          69461-054          Comp#1          FPC Schuylkill
    **LAST NAME, FIRST, MIDDLE INITIAL**          **REG. NO.**          **UNIT**          **INSTITUTION**

**Part A- INMATE REQUEST** The reason for this appeal, is that I do have an extraordinary and compelling reason for compassionate release. I have Cellulitis and I'm Obese/Overweight, also FCI Schuylkill is failing to protect me from COVID-19 and are unable to follow/implement the BOP's action plan. There is an Major COVID-19 Outbreak at FCI Schuylkill, and us at the Camp havnt been tested. My release plan is, I will live with my Family, in Hackensack, N.J. at 25 Fairmont Ave. Apt.CB. I will work with my Wife, in her business "Endless Glintz". I will self quarantine in my own room, upon release from FCI Schuylkill.

1-31-2022
    **DATE**

David Santiago
    **SIGNATURE OF REQUESTER**

**Part B- RESPONSE**

FCI Schuylkill

FEB 0 2 2022

Warden's Office

Exhibit B ⑥

    **DATE**          **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: 110842-F2

    CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
    **LAST NAME, FIRST, MIDDLE INITIAL**          **REG. NO.**          **UNIT**          **INSTITUTION**

SUBJECT: _____

    **DATE**          **RECIPIENT'S SIGNATURE (STAFF MEMBER)**          BP-229(13)
    APRIL 1982
FPI-PEPR          PRINTED ON RECYCLED PAPER

**SANTIAGO, David**
**Reg. No. 69461-054**
**Camp**
**Remedy ID# 1108421-F2**
**Page 1 of 2**

## Part B - RESPONSE

This is in response to your Inmate Request for Administrative
Remedy received on February 2, 2022, wherein you appeal the
denial for Compassionate Release/Reduction in Sentence (RIS) and
consideration under the Coronavirus Aid, Relief, and Economic
Security (CARES) Act in accordance with Attorney General William
Barr's Memorandum, dated March 26, 2020, and the First Step Act.

Title 18 of the United States Code, section 3582(c)(1)(A), allows
a sentencing court, on motion of the Director of the BOP, to
reduce a term of imprisonment for extraordinary or compelling
reasons. BOP Program Statement No. 5050.50, Compassionate
Release/Reduction in Sentence: Procedures for Implementation of
18 U.S.C. §§ 3582 and 4205(g), provides guidance on the types of
circumstances that present extraordinary or compelling reasons,
such as the inmate's terminal medical condition; debilitated
medical condition; status as a "new law" elderly inmate, an
elderly inmate with medical conditions, or an "other elderly
inmate"; the death or incapacitation of the family member
caregiver of the inmate's child; or the incapacitation of the
inmate's spouse or registered partner. Your request has been
evaluated consistent with this general guidance.

A review of your case indicates your medical history does not
meet the criteria as stated above, regarding a Compassionate
Release/Reduction in Sentence (RIS) for inmates with medical
circumstances.  You are currently able to independently adapt to
activities of daily living and are able to perform self-
maintenance activities in a correctional environment.

The Bureau of Prisons is stringently following the guidelines set
forth by the Centers for Disease Control (CDC) during the COVID-
19 pandemic.  Per the CDC, the best way to prevent the spread of
infection and decrease the risk of becoming sick is by washing
your hands often with soap and water for at least 20 seconds,
practicing social distancing, and wearing a face covering.  Soap
has been, and continues to be available to inmates to use as
often as needed. Face coverings also remain mandatory for inmates
while outside of their cell, and the masks provided to the inmate
population can also be washed with soap and water.  Additionally,
the institution has been on modified operations since the onset

Exhibit B ⑦

SANTIAGO, David
Reg. No. 69461-054
Camp
Remedy ID# 1108421-F2
Page 2 of 2

---

### Part B - RESPONSE

of the pandemic to limit inmate movement and facilitate social
distancing.

Currently, section 12003(b)(2) of the Coronavirus Aid, Relief,
and Economic Security Act ("CARES ACT") grants discretion to the
BOP to place inmates on home confinement for a longer term under
18 U.S.C. 3624(c)(2).  The BOP's discretion is guided by criteria
listed in memorandum from the Attorney General regarding Home
Confinement dated March 26, 2020.  After a review of your case,
we have determined you are not suitable for priority placement on
Home Confinement.  Specifically, your medium risk recidivism
score and past conviction for a crime of violence disqualifies
you from priority placement.

Accordingly, your Request for Administrative Remedy is denied.

In the event you are not satisfied with this response and wish to
appeal, you may do so within 20 calendar days of the date of this
response by submitting a BP-230(10) to the Regional Director,
Federal Bureau of Prisons, Northeast Regional Office, U.S.
Customs House, 2nd and Chestnut Street, Philadelphia, PA 19106.


J. Sage, Warden                           2.7.22
                                          Date


Exhibit B ⑧

TRULINCS  23758055 - HOLTON, RUBEN - Unit: SCH-E-A

------------------------------------------------------------------------------------------

FROM: CAMP UNIT TEAM
TO: 23758055
SUBJECT: RE:***Inmate to Staff Message***
DATE: 12/15/2021 07:37:02 AM

Your email was received and forwarded to the appropriate departments.


>>> ~^!"HOLTON, ~^!RUBEN" <23758055@inmatemessage.com> 12/14/2021 9:43 AM >>>
To: R. Miller
Inmate Work Assignment: Unicor

Hello, I would like to ask is anything going to be done about the hot water in B- Range, and the showers in A and B Ranges. We, all 119 of us are in jumbles trying to take a shower with only 4 avaliable. This camp is becomming cruel and unusual punishment, as we are starting to be deprived of our right to be free from these inhumane conditions, especially when Camp #2 has been empty for over a month now, and we are all stuffed into one camp when ther'es a completely empty camp to put prisoners in so we can social distance more appropriately. Especially since we are in the red and these two variants are running wild, Delta and Omicron. Any help that you can afford us with getting these issues fixed, will be greatly appreciated.

Exhibit C (9)

```
SCHDV          *        INMATE EDUCATION DATA        *   01-19-2022
PAGE 001       *            TRANSCRIPT               *   12:11:38


REGISTER NO: 69461-054     NAME..: SANTIAGO              FUNC: PRT
FORMAT.....: TRANSCRIPT     RSP OF: SCH-SCHUYLKILL FCI


------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION             START DATE/TIME STOP DATE/TIME
SCH  ESL HAS    ENGLISH PROFICIENT      02-18-2014 1356 CURRENT
SCH  GED EARNED GED EARNED IN BOP       02-18-2014 1356 CURRENT


------------------------- EDUCATION COURSES -------------------------
SUB-FACL     DESCRIPTION                START DATE STOP DATE EVNT AC LV  HRS
SCH SCP   V-HOUSEKEEPING APPRENTICESHIP 12-14-2021 CURRENT
FTD GP    CLEANING CHEMICALS            06-01-2020 06-15-2020  P   C  P   10
FTD GP    TPD: ARC WELDING OPERATION 419 04-01-2020 05-01-2020 P   C  P   20
FTD GP    BLUEPRINT READING FOR WELDERS 04-01-2020 05-01-2020  P   C  P   12
FTD GP    MAINTENANCE PIPEFITTING       04-01-2020 05-01-2020  P   C  P   10
FTD GP    INDUSTRIAL RIGGING PRACT TPC  04-01-2020 05-01-2020  P   C  P   14
FTD GP    TPC: ANALYTICAL INSTRMNTN 278 04-01-2020 04-01-2020  P   C  P   10
FTD GP    UNDERSTANDING 3PHASE MOTOR SYS 04-01-2020 05-01-2020 P   C  P   20
FTD GP    OPERATE&MAINTAIN 1PHASE MOTORS 04-01-2020 05-01-2020 P   C  P   20
FTD GP    ELECTRICAL MEASURING INSTRUMEN 03-01-2020 04-01-2020 P   C  P   10
FTD GP    TPC: WORK PLANNING&SETUP (163) 03-01-2020 04-01-2020 P   C  P   10
FTD GP    BUSINESS MATH-WEST            10-07-2019 01-06-2020  P   C  P   24
CUM       CRC LIVING FREE WORKSHOP      06-12-2019 06-25-2019  P   C  P   10
CUM       CLN CONFLICT RESOLUTION       03-18-2019 04-22-2019  P   C  P   12
CUM       VICTIM IMPACT COUNSELING GP   04-29-2019 05-02-2019  P   C  P    8
CUM       CRC COLLEGE PREP CLASS        03-22-2019 03-29-2019  P   C  P    4
CUM       CRC GREEN JOBS WORKSHOP       02-12-2019 02-20-2019  P   C  P   10
BRO M     CRITICAL THINKING            11-09-2018 11-30-2018  P   C  P    9
BRO M     ENTREPRENEURSHIP              05-21-2018 07-06-2018  P   C  P   24
BRO M     RESUME MANAGEMENT             05-16-2018 05-23-2018  P   C  P    8
CUM       CAREER SUCCESS                07-07-2017 07-28-2017  P   C  P   10
CUM       CLN INTRPERSONAL COMMUNICATION 07-10-2017 07-17-2017 P   C  P    5
CUM       JOB SAVVY                     07-05-2017 07-13-2017  P   C  P   13
CUM       SELF DISCOVERY CRC CLASS      07-18-2017 07-27-2017  P   C  P   15
CUM       MAKING THE MOST OF UR ABILITES 07-03-2017 07-11-2017 P   C  P    8
CUM       RELAPSE PREVENTION            06-06-2017 06-22-2017  P   C  P   23
CUM       VICTIM IMPACT COUNSELING GP   06-19-2017 06-22-2017  P   C  P   10
CUM       CLN ANGER MANAGEMENT          05-08-2017 05-08-2017  P   C  P    8
CUM       CRC LIVING FREE WORKSHOP      05-17-2017 05-25-2017  P   C  P   15
CUM       CRC BARRIERS TO EMPLOY SUCCESS 05-02-2017 05-16-2017 P   C  P   14
CUM       9 TO 5 BEATS 10 TO LIFE CLASS 05-05-2017 05-26-2017  P   C  P    8
CUM       CLN TIME MANAGEMENT           05-01-2017 05-01-2017  P   C  P    3
RBK       SUICIDE COMPANION             01-06-2017 04-07-2017  P   C  P    6
RBK       SUICIDE COMPANION             06-20-2016 09-21-2016  P   C  P    7
RBK       CRIMINAL THINKING             08-03-2016 09-21-2016  P   W  V    6
RBK       1230 CUSTOMER SERVI SPECIALIST 07-01-2016 08-26-2016 P   C  M  109
RBK       1230 INTO TO CUSTOM SERV SPEC 01-29-2016 08-23-2016  P   C  M  103
RBK       DEFY VENTURES,CEO OF YOUR LIFE 01-08-2016 06-14-2016 P   C  P   66
RBK       INFORMATIONAL JOB FAIR        04-24-2016 04-30-2016  P   C  P    2
RBK       ANGER MANAGEMENT              11-30-2015 04-11-2016  P   C  P   13


G0002     MORE PAGES TO FOLLOW . . .
```

Exhibit G (49)

```
SCHDV          *          INMATE EDUCATION DATA          *     01-19-2022
PAGE 002        *              TRANSCRIPT                 *     12:11:38


REGISTER NO: 69461-054      NAME..: SANTIAGO              FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: SCH-SCHUYLKILL FCI
```

```
---------------------------- EDUCATION COURSES ----------------------------
SUB-FACL    DESCRIPTION                  START DATE STOP DATE EVNT AC LV  HRS
RBK         LEADERSHIP & ETHICS          02-01-2016 02-19-2016  P   C  P    2
RBK         RELATIONSHIPS & CONFLICT     02-01-2016 02-19-2016  P   C  P    2
RBK         TEAMWORK & MOTIVATION        02-01-2016 02-19-2016  P   C  P    2
RBK         KEYS TO SELF-MANAGEMENT      02-01-2016 02-19-2016  P   C  P    2
RBK         ETIQUETTE & IMAGE            02-01-2016 02-19-2016  P   C  P    2
RBK         COMMUNICATION SKILLS         02-01-2016 02-19-2016  P   C  P    2
RBK         GOALS & ATTITUDES            02-01-2016 02-19-2016  P   C  P    2
RBK         HOW TO RE-ENTER SOCIETY      01-27-2016 01-29-2016  P   C  P    4
RBK         RECIDIVISM CYCLE             01-22-2016 01-25-2016  P   C  P    4
RBK         THE PURPOSE OF PRISON        01-15-2016 01-20-2016  P   C  P    4
RBK         CRIMINAL MIND SET            01-11-2016 01-13-2016  P   C  P    4
RBK         EMPLOYMENT                   01-21-2016 01-27-2016  P   C  P    6
RBK         CHOOSE YOUR PERSPECTIVE      01-13-2016 01-19-2016  P   C  P    6
RBK         GETTING MOST OUT OF FAIRSHAKE 01-05-2016 01-11-2016 P   C  P    6
RBK         INCORPORATING A BUSINESS     11-24-2015 01-07-2016  P   C  P   12
RBK         INTERNSHIP WORKSHOP          09-21-2015 11-05-2015  P   C  P    2
RBK         INTERVIEW WORKSHOP           09-21-2015 11-05-2015  P   C  P    2
RBK         JOB SEARCH WORKSHOP          09-21-2015 11-05-2015  P   C  P    2
RBK         RESUME WORKSHOP              09-21-2015 11-05-2015  P   C  P    2
RBK         TEAMWORK WORKSHOP            09-21-2015 11-05-2015  P   C  P    2
RBK         PROFESSIONALISM WORKSHOP     09-21-2015 11-05-2015  P   C  P    2
RBK         TIME MANAGEMENT WORKSHOP     09-21-2015 11-05-2015  P   C  P    2
RBK         SOCIAL MEDIA WORKSHOP        09-21-2015 11-05-2015  P   C  P    2
RBK         VICTIM AWARENESS & RESTITUTION 05-26-2015 11-18-2015 P  C  P   10
RBK         REENTRY SUPPORT RESOURCES    05-26-2015 11-17-2015  P   C  P   10
RBK         VALUES,GOAL SETTING, & ACHIEVE 05-26-2015 11-14-2015 P  C  P   10
RBK         BENEFITS OF POSITIVE THINKING 07-16-2015 10-27-2015 P   C  P   20
RBK         PARENTING PROGRAM PART 2     09-29-2015 10-26-2015  P   C  P   20
RBK         BUSINESS PLAN WRITING / 4161 09-09-2015 10-17-2015  P   W  V    3
RBK         JOB PLACEMENT ASSISTANCE     05-26-2015 09-30-2015  P   C  P   10
RBK         MONEY MANAGMENT SKILLS       05-26-2015 09-30-2015  P   C  P   10
RBK         PERSONAL DEVELOPMENT         05-26-2015 09-30-2015  P   C  P   10
RBK         PROBLEM SOLVING&DECISION MAKE 05-26-2015 09-30-2015 P   C  P   10
RBK         ANGER MANAGEMENT             05-26-2015 09-29-2015  P   C  P   10
RBK         COUNSELING IND. COMM. REENTRY 05-26-2015 09-29-2015 P   C  P   10
RBK         EMPLOYMENT SKILLS            05-26-2015 09-29-2015  P   C  P   10
RBK         PARENTING PROGRAM PART 1     08-25-2015 09-24-2015  P   C  P   20
RBK         MONEY SMARTS                 07-28-2015 09-09-2015  P   C  P    9
RBK         EMPLOYMENT                   08-14-2015 08-14-2015  P   C  P    2
RBK         GOALS & ATTITUDES            08-13-2015 08-13-2015  P   C  P    2
RBK         CHOOSE YOUR PERSPECTIVE      08-10-2015 08-10-2015  P   C  P    2
RBK         KEYS TO SELF-MANAGEMENT      07-29-2015 07-29-2015  P   C  P    2
RBK         LEADERSHIP & ETHICS          07-27-2015 07-27-2015  P   C  P    2
RBK         ETIQUETTE & IMAGE            07-20-2015 07-27-2015  P   C  P    2
RBK         EMPLOYMENT                   07-20-2015 07-20-2015  P   C  P    2


G0002       MORE PAGES TO FOLLOW . . .
```



Exhibit G  30

```
 SCHDV         *          INMATE EDUCATION DATA          *     01-19-2022
 PAGE 003       *              TRANSCRIPT                *     12:11:38


 REGISTER NO: 69461-054     NAME..: SANTIAGO              FUNC: PRT
 FORMAT.....: TRANSCRIPT     RSP OF: SCH-SCHUYLKILL FCI
```

```
-------------------------------- EDUCATION COURSES ----------------------------
SUB-FACL    DESCRIPTION               START DATE  STOP DATE EVNT AC LV   HRS
RBK         GOALS & ATTITUDES         07-16-2015 07-20-2015   P  C  P      2
RBK         CHOOSE YOUR PERSPECTIVE   07-13-2015 07-17-2015   P  C  P      2
RBK         COMMUNICATION SKILLS      07-02-2015 07-13-2015   P  C  P      2
RBK         CREDIT BOOSTER            06-03-2015 07-01-2015   P  C  P      3
RBK         HOW TO START A NON-PROFIT ORG 06-03-2015 06-22-2015 P C P      6
NYM M       AFRICAN AND AFRICAN AM DRAMA 01-06-2015 04-06-2015 P C P       9
NYM M       IND STUDY WILDS OF MADASCAR 02-26-2015 02-26-2015 P C P        1
NYM M       IND STUDY WILD BILL HICKOK 02-26-2015 02-26-2015  P  C  P      1
NYM M       INDEPEN STUDY LEWIS AND CLARK 02-25-2015 02-25-2015 P C P      1
NYM M       INDEPEN STUDY ARABIAN NIGHTS 02-25-2015 02-25-2015 P C P      1
NYM M       IND STUDY CROCODILE FEAST 02-25-2015 02-25-2015   P  C  P      1
NYM M       INDEPEN STUDY HOWARD HUGHES 02-22-2015 02-22-2015 P C P       .1
NYM M       INDEPEN STUDY HOOVER DAM  02-22-2015 02-22-2015   P  C  P      1
NYM M       INDEPEN STUDY CONGO FOREST 02-25-2015 02-25-2015  P  C  P      1
NYM M       IND STUDY FORREST OF THE DEEP 02-25-2015 02-25-2015 P C P      1
NYM M       INDEPENDENT STUDY DRAGONS MYTH 02-25-2015 02-25-2015 P C P     1
NYM M       SELF STUDY BRIGITTE BARDOT 02-25-2015 02-25-2015  P  C  P      1
NYM M       INDEPEN STUDY ROME 4      02-25-2015 02-25-2015   P  C  P      1
NYM M       INDEPEN STUDY ROME 2      02-25-2015 02-25-2015   P  C  P      1
NYM M       INDEPEN STUDY AFRICAN WILDLIFE 02-25-2015 02-25-2015 P C P     1
NYM M       GETTING OUT BY GOING IN   10-24-2014 01-02-2015   P  C  P     12
NYM M       POETRY LEISURE TIME ACTIVITY 10-28-2014 01-02-2015 P C P       9
NYM M       INDEPEN STUDY LEWIS AND CLARK 12-10-2014 12-10-2014 P C P      1
NYM M       INDEPEN STUDY CONGO FOREST 12-10-2014 12-10-2014  P  C  P      1
NYM M       INDEPEN STUDY ZEBRA PATTERNS 12-10-2014 12-10-2014 P C P       1
NYM M       INDEPEN STUDY CONGO FOREST 12-10-2014 12-10-2014  P  C  P      1
NYM M       INDEPEN STUDY AFRICAN WILDLIFE 12-10-2014 12-10-2014 P C P     1
NYM M       INDEPEN STUDY HOWARD HUGHES 12-10-2014 12-10-2014 P C P       1
NYM M       IND STUDY CROCODILE FEAST 12-10-2014 12-10-2014   P  C  P      1
NYM M       IND STUDY MYSTERIES OF MANKIND 11-21-2014 11-21-2014 P C P     1
NYM M       INDEPENDENT STUDY NAMIB DESERT 11-07-2014 11-07-2014 P C P     1
NYM M       INDEPEN STUDY TIGERS OF SNOW 11-07-2014 11-07-2014 P C P       1
NYM M       INDEPEN STUDY DAVY CROCKETT 11-07-2014 11-07-2014 P C P        1
NYM M       INDEPENDENT STUDY CAMOUAGLE 11-07-2014 11-07-2014 P C P        1
NYM M       IND STUDY REPTILES & AMPHIBANS 10-10-2014 10-10-2014 P C P     1
NYM M       INDEPEN STUDY GREAT APES  10-10-2014 10-10-2014   P  C  P      1
NYM M       SELF STUDY BRIGITTE BARDOT 10-10-2014 10-10-2014  P  C  P      1
NYM M       INDEPENDENT STUDY DRAGONS MYTH 10-10-2014 10-10-2014 P C P     1
NYM M       INDEPENDENT STUDY DRAGONS MYTH 10-10-2014 10-10-2014 P C P     1
NYM M       IND STUDY RAIN FOREST     10-03-2014 10-03-2014   P  C  P      1
NYM M       ANGER MGT. TRAINING UNIT MGT. 08-04-2014 09-05-2014 P C P      8
```

```
---------------------------- HIGH TEST SCORES -----------------------------
TEST        SUBTEST          SCORE      TEST DATE     TEST FACL   FORM      STATE
GED         AVERAGE          454.0    12-11-2013      NYM         PASS       NY
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

Exhibit G (51)

```
   SCHDV       *        INMATE EDUCATION DATA       *     01-19-2022
PAGE 004 OF 004 *             TRANSCRIPT            *     12:11:38


REGISTER NO: 69461-054    NAME..: SANTIAGO              FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: SCH-SCHUYLKILL FCI

-------------------------- HIGH TEST SCORES --------------------------------
TEST        SUBTEST       SCORE     TEST DATE     TEST FACL     FORM     STATE
GED         LIT/ARTS      460.0    06-08-2010     NYM           IB       NY
            MATH          450.0    06-08-2012     NYM           IB       NY
            SCIENCE       480.0    12-11-2013     NYM           II       NY
            SOC STUDY     450.0    06-08-2010     NYM           IB       NY
            WRITING       430.0    12-11-2013     NYM           II       NY
```

```
G0000       TRANSACTION SUCCESSFULLY COMPLETED
```



David Santiago 69461-054
FCI Schuylkill Satellite Camp
Federal Correctional Institution
P.O. Box 759
Minersville, P.A. 17954



USPS SDNY

7021 0350 0000 3647 3025

Honorable Valevie E. Caproni
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007








